UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14CV-00456-RGJ

**ANTWYNETTE T. HOUSTON**                                                                      **PLAINTIFF**

**VS.**

**OFFICER SCOTT STURGEON, et al.**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This 42 U.S.C. § 1983 civil rights action was settled by all parties on July 8, 2019, and the case was subsequently dismissed without prejudice and stricken from the Court's active docket. (DN 183). Remaining is an attorney's fee lien filed by Plaintiff's former counsel, Aubrey Williams. (DN 86). Plaintiff's successor counsel, Robert Gresham, has filed a Motion to Dismiss Williams' Attorney's Fees Lien. (DN 187). Williams has responded (DN 193), and Gresham has replied (DN 194). Williams has also filed a Motion for Leave to File a Sur-Reply to Gresham's Reply (DN 198) and a Motion to Supplement his Motion for Leave to File a Sur-Reply (DN 201). Gresham did not respond to either motion. These matters are ripe for adjudication.

I. Background

This civil rights action stems from an incident between Plaintiff Antwynette Houston ("Houston") and Defendant Scott Sturgeon ("Sturgeon"), a Louisville-Metro police officer, at a Thornton's gas station on August 2, 2013.[1] Houston alleges injury as a result of Sturgeon's use of excessive force while arresting her. When this action was filed on June 21, 2014, Houston was

---

[1] It is not necessary for the Court to comprehensively recap the facts of this case to resolve the instant attorney's fees dispute.

represented by Aubrey Williams ("Williams"). Williams also represented Houston in her related state court criminal case and ultimately secured dismissal of her misdemeanor charges.

On April 7, 2016, Robert Gresham ("Gresham") and Michael Wright ("Wright") entered notices of appearance in this case on Houston's behalf.[2] (DN 83). Eleven days later, Williams filed a "Notice of Attorney's Lien" on any settlement or judgment obtained by Houston for fees earned and costs in this action and the underlying state court criminal action. (DN 86). The Notice of Lien was followed by a Motion to Withdraw by Williams, stating that he'd been discharged by Houston. (DN 87). The Court promptly granted his Motion. (DN 89).

Over three years later, the parties settled the instant case. (DN 182). The Court dismissed the case without prejudice and struck it from the active docket. (DN 184). Shortly after the dismissal, Gresham sought the Court's guidance on disbursement of the settlement funds in light of Williams' attorney's fees lien. (DN 185). The Court ordered Defendants to pay Houston and Gresham the agreed amount in settlement of the case and ordered Gresham to hold all attorney's fees in his escrow account pending resolution of Williams' attorney lien. (*Id.*). From the e-mail correspondence produced by both parties, it appears that Williams was difficult to contact and largely uncooperative in attempting to resolve the dispute. (*See* DN 187, at pp. 13-20; DN 193, at pp. 2-47). Because Gresham and Williams were unable to resolve the dispute without Court intervention, Gresham filed the present Motion to Dismiss Williams' attorney's lien. (DN 187).

II. Analysis

A. Williams' Motion for Leave to File Sur-Reply (DN 198) and Williams' Motion for Leave to Supplement Sur-Reply (DN 201)

---

[2] Dwight Brannon also entered an appearance on behalf of Houston in May of 2016. Even though Brannon, Gresham, and Wright all made various filings in Houston's case, for purposes of this Order, the Court will simply reference Gresham as Houston's successor counsel since Gresham filed the Motion to Dismiss Williams' Attorney's Fee Lien currently at issue.

Williams claims he should be granted leave to file sur-reply because Gresham's reply brief contained approximately 100 pages of text messages that were not previously provided to him. Williams feels this "material evidence" refutes Gresham's accusations that he: (1) refused to represent Houston; (2) tried to intimidate Houston into a $175,000 settlement; (3) charged Houston a contingency fee in a criminal case; and (4) mal-practiced Houston's case so that Gresham had to repair the damage. (DN 198-2). Then, in his Motion to Supplement his Motion for Sur-reply, Williams states that he omitted in his initial sur-reply that the 100 pages of text messages confirms that Houston could no longer finance her case. (DN 201).

Neither the Federal Rules of Civil Procedure nor the Local Rules of this District expressly permit the filing of sur-replies. *See, e.g.,* LR 7.1(g) ("A motion is submitted to the Court for decision . . . after the reply is filed, or the time for filing the response or reply has expired."). Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010)). Sur-replies are generally disfavored in this District because they are often "a strategic effort by the nonmoving party to have the last word on a matter." *Rose v. Liberty Life Assurance Co. of Boston*, No. 3:15-CV-28-DJH-CHL, 2015 WL 10002923, at *1 (W.D. Ky. Oct. 19, 2015) (quoting *Liberty Legal Found. v. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn 2012) (add'l citation omitted)). Courts within this District have used their discretion to deny the filing of sur-replies "where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.* (quoting *Liberty Legal Found.*, 875 F. Supp. 2d at 797); *see also Key,* 551 F. App'x at 265.

The Court is perplexed by Williams' motion to file sur-reply. He claims that Gresham's reply brief contained approximately 100 pages of text messages that were not previously provided

to him. Upon review of Gresham's reply brief, however, the Court found no attached text messages. The text messages that Williams appears to be referencing were instead included as part of Gresham's original motion to dismiss Williams' attorney's lien. (*See* DN 187, at pp. 26-123). That means Williams had the opportunity to review these text messages and make any legal arguments based on such messages before preparing his response brief. This evidence cannot be considered new.[3] Because Williams does not otherwise allege that Gresham's reply presents new evidence or raises new legal arguments, the Court will deny his motion for sur-reply and motion to supplement sur-reply.

B. Gresham's Motion to Dismiss Williams' Attorney's Lien (DN 187)

Williams' attorney's fees lien seeks compensation for his work on Houston's state court criminal case,[4] the instant federal civil case, and costs related to both cases. (DN 86). Neither the "Notice of Lien" nor Williams' Response specify a monetary amount for these fees and costs but the Court gathers from the recent briefing that Williams seeks $25,000 for his fee in the criminal case; approximately $81,000 for his fee in the civil case; and approximately $6,000 in costs in the civil case.[5] Williams also believes he is entitled to an additional $50,000 for the "extraordinary result" of getting Houston's criminal case dismissed because without such dismissal, Houston's civil case "would have been doomed." (DN 193-9, at pp. 5-6).

Whether Williams can recover a reasonable fee turns on the circumstances that led to the dissolution of the attorney-client relationship with Houston. Where an attorney withdraws without

---

[3] The 100 pages of text messages would also not likely be considered "new" since the text messages were between Williams and Houston and Williams arguably is in possession of such communications.

[4] Williams identifies the state court case as *Commonwealth v. Antwanetta (Antwynette) Houston*, Case No. 13-T-052463. (DN 86).

[5] Williams provided an updated billing report from Houston's case with his Response, claiming 231.40 total hours at a rate of $350.00 per hour. (*See* DN 193-9).

valid cause, he cannot collect any payment under a contingency fee agreement. *See Lofton v. Fairmont Specialty Ins. Mgrs., Inc.*, 367 S.W.3d 593, 595 (Ky. 2012) (citing *Baker v. Shapero*, 203 S.W.3d 697 (Ky. 2006)). This is true even in actions for quantum meruit, which are "damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." Black's Law Dictionary 1276 (8th ed. 2004). But where a client discharges the attorney or where counsel has good cause to withdraw, he may seek quantum meruit damages for reasonable fees. *Adler v. Childers*, Misc. No. 14-01-ART, 2014 WL 5311133, at *4 (E.D. Ky. Oct. 16, 2014). And where both parties contribute to the attorney-client relationship's breakdown, Kentucky law indicates that the attorney may also recover his fees under quantum meruit. *Guy v. Lexington-Fayette Urban Cnty. Gov.*, 624 F. App'x 922, 929 (6th Cir. Aug. 20, 2015) (quoting *Adler*, 2014 WL 5311133, at *4) (citing *Kamber v. Abrams*, No. 2011-CA-000988-MR, 2012 WL 5305735, at *4 (Ky. Ct. App. Oct. 12, 2012) (unpublished)).

i. Is Williams Entitled to Recover in Quantum Meruit?

Gresham claims that Williams is not entitled to recover any attorney's fees in Houston's civil case because Houston discharged Williams after he attempted to force Houston into an early, unreasonable settlement for $175,000. (DN 187, at p. 3). Houston's "discharge [of Williams] for attempting to force an unfair settlement," Gresham argues, "is an uncontestable fact without need for further proof." (*Id.*). Williams fervently denies this allegation and points out that Gresham has provided no supporting evidence. (DN 193, at pp. 14-15).

This Court agrees with Williams on this issue. Other than submitting an Affidavit as to the truth and accuracy of his Motion (*see* DN 187, at pp. 11-12), Gresham neither cites to nor produces any evidence of Williams' alleged pressure on Houston to accept a $175,000 settlement. In fact, the record reflects that Williams valued Houston's case at seven figures. (*See* DN 193-13, at p. 6).

5

Further, the hundred pages of text messages that Gresham produces between Williams and Houston reveal no pressure by Williams to get Houston to settle. Very few of the text messages even discuss potential settlement of the case. In one, Williams merely states that Houston better hope the judge persuades the city to settle the case because she is her own biggest enemy. (DN 187, at p. 37). In another message, Williams stated:

> You are so terribly wrong. You are the one who won't listen. You are not a lawyer. You can't see that a case is put together and evolves in stages. The final stage is the trial. What u expect at this stage is baffling. Even more baffling is that you don't understand why they won't settle. They it [sic] to go to trial because of the great difficulty it is to win cases against police officers. The cases that they don't take to trial are ugly and extreme and they settle early, and before suit is filed generally. Furthermore, you antagonized them. I had someone close to Fisher trying to get a settlement but your campaign hurt that effort . . .

(DN 187, at pp. 27-28). While these text messages to Houston may have been harsh, they do not prove that Williams attempted to force an early settlement of $175,000 on Houston. On the contrary, they insinuate that Houston wanted to settle early but thwarted Williams' efforts at persuading the Defendants to do so.

Additionally, Gresham equivocates on how Williams left the case, first stating that Williams was discharged by Houston due to the alleged settlement pressure, then later stating that Williams withdrew when Houston refused the alleged settlement offer. (*See* DN 187, at pp. 3-4). Williams stated in his Motion to Withdraw that Houston discharged him as her attorney and informed him that she had retained an Ohio law firm to represent her in the matter. (DN 87). Without any concrete evidence of Williams pressuring Houston to accept a $175,000 settlement offer, the Court cannot conclude that Williams improperly withdrew from the case and forfeited his right to quantum meruit damages.

The Court finds this case is similar to *Adler*, where the relationship between the client and discharged attorney had "developed fissures over time" after the client repeatedly questioned his

6

attorney's ability to represent him. 2014 WL 5311133, at *3-4. The issues between Houston and Williams were not one-sided. The many text messages produced between the two demonstrate an unconventional and at times turbulent attorney-client relationship. The text messages reveal Williams offending Houston, calling her "insulting and unappreciative." (DN 187, at p. 34). Houston would fire back that Williams was not looking at the evidence carefully and was not listening to her suggestions. (*Id.* at p. 35). At one point Houston noted: "I'm so tired of you telling me what a horrible client I am and throwing in my face how much you've spent on this case. I wish you never took the case since I annoy you so much. No matter how much you've invested, you don't get to abuse me!" (*Id.* at p. 43). Houston even suggested that Williams should consider dropping her case because she felt he didn't respect her or her feelings. (*Id.*). Because the attorney-client relationship clearly deteriorated over two years due to both Williams' and Houston's actions, the Court finds Williams can properly recover his reasonable fees under quantum meruit.

### ii. How Much is Williams Entitled to Recover?

Where a discharged attorney is entitled to collect fees under the theory of quantum meruit, he is not tethered to the structure of any previous contract. *Adler*, at *4 (citing *Baker*, 203 S.W.3d at 699) (quoting *Gilbert v. Walbeck*, 339 S.W.2d 450, 451 (Ky. 1960)). Under Kentucky law, a trial court conducting a quantum meruit analysis can consider factors beyond the number of hours the discharged attorney put into the case. *Wilden v. Laury Transportation, LLC*, No. 3:13-cv-784-DJH-CHL, 2017 WL 2272083, at *4 (W.D. Ky. May 24, 2017) (citing *Getty Law Group, PLLC v. Bowles Rice McDavid Graff & Love, PLLC*, No. 2011-CA-001393-MR, 2012 WL 6061732 (Ky. Ct. App. Dec. 7, 2012)). These factors include "the nature and extent of the services rendered by the discharged attorney within the scope of the contingency fee contract; the nature and extent of the services rendered by the second attorney; the training, knowledge, experience, and reputation

of each attorney; and the benefit to the client." *Getty Law Group, PLLC*, 2012 WL 6061732, at *5. The burden generally falls upon the discharged attorney to prove the reasonable value of the services performed. *Id.*

First, Williams should not recover in quantum meruit for any attorney's fees or costs related to his representation of Houston in her state court criminal action. While the dismissal of Houston's misdemeanor certainly formed the basis of her § 1983 federal civil rights action, the state court action is separate from this federal action and was not contemplated in settlement of this case. This Court has no jurisdiction to award attorney's fees or costs to Williams for his work on Houston's separate state criminal action. His attorney's fee lien in this case is, therefore, invalid as to those state criminal fees, and Williams' quantum meruit recovery will be limited to his reasonable damages in this § 1983 case. For these same reasons, the Court will deny Williams' request for an additional $50,000 for the "extraordinary result" of getting Houston's misdemeanor dismissed. Williams may seek redress for his criminal fee directly from Houston.

As for the civil case, Williams asserts he worked 231.40 hours at a rate of $350.00 over the almost two-year period that he was employed as Houston's attorney.[6] Gresham claims that Williams' time entries are fraudulent, unrealistic, and include instances of double-billing. (DN 187, at pp. 6-8). The time entries provided by Williams and the record of the case demonstrate that despite the tumultuous attorney-client relationship between Williams and Houston, Williams rendered valuable legal services in Houston's case. While representing Houston for almost two years, he filed the complaint and amended complaint, conducted discovery, completed depositions

---

[6] Gresham claimed in his Motion that the billing records Williams produced included 264.85 hours of work on Houston's civil case. Williams' Response adjusts certain time entries for the case because Williams allegedly discovered that his assistant had reformatted and converted his Microsoft Excel file into a Microsoft Word file, which resulted in errors in the records sent to Gresham. (DN 193, at pp. 10-11). Williams submits corrected time entries totaling 231.40 hours. (DN 193-9).

of Officer Scott Sturgeon and two treating physicians (Dr. Norman Lewis and Dr. Vivek Agrawal), and filed a motion to compel discovery from Defendants (DN 63). Williams also prepared for a settlement conference before this Court, which was ultimately rescheduled due to Gresham's entry of appearance as counsel for Houston. (DN 79; DN 81; DN 82). The Court, however, views Williams' billing records with some caution since Williams admits that he had to reconstruct his billed hours for Houston's case because of an IT incident that destroyed "virtually [his] entire electronic filing system[.]" (DN 193, at p. 12).

A review of Gresham's work from the record shows he and his co-counsel also contributed significantly to Houston's case. Gresham came on the case in April of 2016 and represented Houston for over three years through settlement of the matter in July of 2019. Shortly after entering his appearance, Gresham defended Houston's deposition. (*See* DN 99; DN 130). Much of Gresham's work on Houston's case centered on attempting to extend the expert disclosure deadline, which passed a month after he entered his appearance. First, Gresham filed a motion for leave to identify additional experts out of time and extend the time to file expert reports, where he sought to depose three experts: (1) Dr. Michael Lyman – an expert on law enforcement training, techniques, and procedures; (2) Dr. Jonathan Paley – a surgeon to testify on Houston's pain, suffering, and permanent injuries; and (3) Dr. Kenneth Manges, a vocational specialist and forensic psychologist. (DN 96). Magistrate Judge Dave Whalin denied Gresham's Motion, finding that no good cause was established for an extension because the record did not demonstrate Williams was negligent in his representation. (DN 104, at pp. 4-5). Gresham filed an objection to Judge Whalin's Order. (DN 107). District Judge Charles Simpson denied Gresham's objection and affirmed Judge Whalin's Order. (DN 110).

But Gresham didn't give up. On September 5, 2017, he filed a motion to modify the Court's

9

denial of his request to extend the expert deadline. (DN 132). Once again, Gresham was attempting to introduce treating physician and expert testimony to the case. (*Id.*). After permitting oral argument on this motion, Judge Simpson vacated his earlier order and granted Houston limited additional discovery, including identification of both treating physicians and experts. (DN 156). Gresham was then able to designate seven expert witnesses, some of which were Houston's treating physicians. (DN 159; DN 166). Following these expert disclosures, the parties participated in an unsuccessful private mediation and, later, a mediation before the undersigned. The parties reached an agreement during the court-ordered settlement conference. Gresham and his co-counsel, therefore, contributed significantly to securing a large settlement benefitting Houston.

      Neither Williams nor Gresham submits an affidavit or declaration outlining their experience, expertise, or reputation relative to this case. Williams merely submits his peer rating of 4.5/5 on Martindale-Hubbell, including several reviews from attorneys (DN 193-7) and calls attention to Judge Whalin's earlier Order in this case, which noted that Williams is a "highly experienced civil rights attorney with more than 40 years of legal practice in Louisville and federal and state courts" (DN 193, at p. 8 (citing DN 104, at p. 5)). Gresham submits no information on his, Wright's, or Brannon's qualifications. Independent review of the Wright & Schulte website reveals that Gresham has a "diverse practice" that includes "civil rights litigation," while Wright focuses his practice on personal injury law. *See* https://www.yourohiolegalhelp.com/. Brannon's law firm website reveals that he has practiced in Ohio for over forty years as a civil attorney, focusing on personal injury law. *See* https://branlawfirm.com/attorneys/dwight-d-brannon/. Without more information from counsel on their knowledge and experience in civil rights cases, the Court finds this factor largely unhelpful in determining the reasonableness of Williams' fee.

      Against this backdrop, the Court must determine how much the work Williams performed

was actually worth. In many cases involving attorney's fee liens, the court awards prior counsel a monetary figure based on the number of hours counsel worked at their hourly rate. *See, e.g., Getty Law Grp., PLLC,* 2014 WL 5311133, at *4. The Court declines to do so here for several reasons. First, the Court is not privy to the total amount of disputed attorney's fees that Gresham is holding in his firm's escrow account. That means if the Court awards Williams a specific sum, his portion could be more than the total amount being held in escrow, leaving Gresham and his co-counsel with no fees for their work on the case. Such a result would be inequitable. Second, the party seeking an award of fees must submit evidence supporting the claimed rate and the hours worked. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Williams offers no support for the reasonableness of his proposed hourly rate of $350.00, and the Court agrees with Gresham that the billing records Williams submits appear to contain inaccuracies likely due to Williams reconstructing his time entries after a technical problem destroyed his original entries. Even Williams' allegedly corrected billing records, attached to his Response, are unclear, with handwritten and illegible notations in the margins. (*See* DN 193-10). The better course here is to award a percentage of the fees being held to each Williams and Gresham.

In comparing Williams' work with that of Gresham's in this case, Williams laid the foundation for Houston's claims by filing the Complaint, initiating discovery, and taking several depositions. Yet Williams clearly could have done more while representing Houston, as evidenced by Gresham's tireless efforts to persuade the Court to permit late expert and treating physician testimony. Gresham and his co-counsel also made significant contributions to Houston's case, including defending Houston's deposition and securing settlement of the case with Louisville Metro. Based on this information, the Court concludes the civil fee in this case should be split 40% to Williams and 60% to Gresham. Williams is entitled to 40% of the attorney's fees being held in

escrow, and Gresham and his co-counsel are entitled to the other 60%. This amount will reasonably compensate Williams for the work he performed in Houston's case. If, however, 40% of the settlement proceeds being held in escrow exceeds $87,000 (the amount Mr. Williams seeks in fees and costs for the civil case), Williams' recovery will be capped at that amount.

Lastly, there is a saying, often quoted by judges, that the essence of civility in litigation is that attorneys can "disagree without being disagreeable."[7] Williams did not heed that adage in the current attorney's fee dispute before the Court. While it was understandable for Williams to be defensive as to the serious accusations that Gresham's Motion made regarding his litigation of Houston's case, Williams' Response crosses the line. Williams spends much of his Response waging personal attacks on Gresham's character. He refers to Gresham as "arrogant, condescending, [and] narcissistic." (DN 193, at p. 2). He describes Gresham's motion as insulting, perverted, and derogatory. (*Id.*). He also appears to accuse Gresham of racism, stating "[a]pparently [Gresham] is not aware that we are no longer living in the antebellum period – though some treat African Americans as if they were – when white slave masters served them gruel as their pay for working from sun-up to sun-down" and "[Gresham] raises and uses as a platform for his perverted and visceral agenda mummified bodies of racial bigotry and insidious acts of injustice to attack my integrity, my good name, and my reputation." (*Id.*). As Gresham points out, these allegations fall flat because Gresham is an African American attorney. (DN 194, at p. 3).

The e-mail communications produced between Gresham and Williams further demonstrate Williams' hostile behavior in this matter. The Court ordered Gresham and Williams to "have meaningful discussions to resolve the attorney's fees issue." (DN 185). When Gresham attempted

---

[7] *See, e.g., State Compensation Fund v. Drobot*, SACV 13-0956 AG (JCGx), 2016 WL 6661338, at *2 (C.D. Cal. Aug. 10, 2016); *Oakley v. Remy Intern., Inc.*, No. 1:10-cv-00166-JMS-MJD, 2011 WL 5147546, at *1 (S.D. Ind. Oct. 26, 2011); *United States v. Hosseini*, No. 05 CR 254, 2009 WL 3242113, at *2 (N.D. Ill. Oct. 6, 2009); *see also*, David F. Herr & Roger S. Haydock, MOTION PRACTICE § 7.04 (8th ed. 2020-1 supplement).

to initiate such discussions, Williams reacted strongly, stating that Gresham's "self-serving mendacious verbosity and asinine threats are of no effect . . ." and "[i]f you cannot support your asininities, I will conclude that you are the pompous charlatan I have heard you are." (DN 187, at p. 15). When Gresham sought copies of Williams' fee agreements with Houston, Williams responded: "[t]he nominal criminal fee was by oral contract. If you want to impugn my integrity on these matters, we are wasting our time." (DN 193-1, at p. 24). Again, while Williams was certainly entitled to defend himself against Gresham's allegations, his conduct crossed the line into inappropriate verbal assaults. Williams' combative behavior in this motion practice certainly did not help his position as it is distracting and extraneous to the issue at hand – the value of the work he performed in representing Houston. For these reasons, the Court will not entertain Williams' suggestion that Gresham and his co-counsel be sanctioned for their conduct related to this motion.

ORDER

**IT IS THEREFORE ORDERED** that Robert Gresham's Motion to Dismiss Aubrey Williams' Attorney's Fee Lien (DN 187) is **DENIED.**

**IT IS FURTHER ORDERED** that Robert Gresham shall pay Aubrey Williams 40% of the attorney's fees currently being held in his law firm's escrow account within thirty (30) days entry of this Order. If 40% of the attorney's fees exceeds $87,000, Mr. Williams' fee will be capped at that amount. If 40% of the attorney's fees equals less than $87,000, Mr. Williams will be awarded the 40%.

**IT IS FURTHER ORDERED** that Aubrey Williams' Motion for Leave to File a Sur-Reply to Mr. Gresham's Reply (DN 198) and Motion to Supplement his Motion for Leave to File a Sur-Reply (DN 201) are **DENIED.**

Regina S. Edwards, Magistrate Judge
United States District Court

April 22, 2020

Copies:  Counsel of Record
Aubrey Williams, Interested Party